IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| CRISTINA ARDENE DIEGELMAN and DAVE DIEGELMAN,<br><br>    Plaintiffs,<br><br><br><br>            vs.<br><br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | MEMORANDUM DECISION AND ORDER GRANTING AMENDED MOTION TO DISMISS<br><br><br><br>Case No. 2:10-CV-1152 TS |

This matter is before the Court on Defendant United States of America's Amended Motion to Dismiss.  For the reasons discussed below, the Court will grant the Motion.

## I.  BACKGROUND

This action arises from a fall off of a bicycle ridden by Plaintiff Cristina Diegelman, as she was returning on the paved Pa'rus Trail headed towards the main west entrance to Zion National Park (the "Park" or "Zion") on the morning of August 29, 2009.  The Pa'rus Trail generally follows the path of the North Fork of the Virgin River leading upstream from the two Park campgrounds just inside the Park's west entrance, and heads northeasterly to a terminus just past the road intersection at the Canyon Junction.  The trail crosses the river several times in its

1

roughly two-mile stretch from the Canyon Junction south to its other terminus at the Watchman Campground.

The pedestrian truss bridges for the Pa'rus Trail include metal cover plates at both ends of each of the several bridges on the trail. Those metal plates cover and span the small gaps between the cement abutments at each end of the bridges and the rest of the bridge structure itself. The bridges also originally used wood lumber for decking material. In 2004, after about ten years of use, National Park Service ("NPS") officials at Zion decided that the wood decking should be replaced because it regularly swelled and contracted with the temperature and humidity extremes at the Park, causing the boards to warp and to be in need of frequent maintenance. In late 2004, the NPS ordered and installed new synthetic lumber on the bridges that would not swell and contract like the earlier wood decking.

On the morning of August 29, 2009, Ms. Diegelman and her husband had been riding their bikes in the Park, first up the Pa'rus Trail, and then returning towards the Park entrance. They first traveled over a bridge spanning Pine Creek and had just entered the second bridge (spanning the North Fork of the Virgin River) south of the canyon junction. Mr. Diegelman was about half way across the second bridge when he heard his wife crash and scream somewhere behind him. Ms. Diegelman had just turned right onto the second bridge from the paved trail when she fell.

As of late August, 2009, when the accident in this case occurred, the Pa'rus Trail did not have any warning signs along it other than a caution sign at either end of the trail that read: "CAUTION - SLOW DOWN - PEDESTRIAN TRAFFIC."[1]

On April 8, 2011, Plaintiffs filed their Amended Complaint in this case, alleging that the metal cover plates on either end of the bridge were too slippery.  Defendant filed its Amended Motion to Dismiss on August 31, 2012, arguing that the discretionary function exception to the Federal Tort Claims Act ("FTCA") deprives this Court of jurisdiction to hear the matter.

## II.  STANDARD OF REVIEW

Defendant has moved to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(1).  Challenges under Rule 12(b)(1) take one of two forms: (1) facial attacks "challeng[ing] the sufficiency of the complaint, requiring the district court to accept the allegations in the complaint as true," and (2) factual attacks, "challeng[ing] the facts upon which subject matter jurisdiction depends."[2]  When there is a factual attack, "the court must look beyond the complaint and has wide discretion to allow documentary and even testimonial evidence under Rule 12(b)(1)."[3]  Where, as here, resolving the jurisdictional claim does not require resolving an aspect of the substantive merits claim, a motion to dismiss is not converted into a motion under Rule 12(b)(6) or Rule 56.[4]

---

[1]Docket No. 38, Ex. 1, at 2.

[2]*Paper, Allied-Indus., Chem. and Energy Workers Int'l Union v. Cont'l Carbon Co.*, 428 F.3d 1285, 1292 (10th Cir. 2005).

[3]*Id.* (citing *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir. 1987)).

[4]*See id.* (citing *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)).

III.  DISCUSSION

Plaintiffs claim that the United States was grossly negligent in the following particulars:

a. Design, maintenance and usage of the bridge and its component parts, which created an unreasonable and unsafe condition for bikers, including Plaintiff Cristina Diegelman;
b. Failure to warn of dangerous conditions;
c. Failure to take action to repair the dangerous conditions that Defendant was or should have been aware of.[5]

"To prevail, however, Plaintiffs must prove more than negligence.  They must also first prove that their claims are not based upon actions immunized from liability under the [FTCA's] discretionary function exception, 28 U.S.C. § 2680(a)."[6]  Pursuant to the discretionary function exception, the FTCA's waiver of sovereign immunity does not apply to

[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.[7]

To determine whether the discretionary function exception applies, district courts apply the two-pronged test of *Berkovitz v. United States*.[8]  In *Berkovitz*, the Supreme Court explained:

In examining the nature of the challenged conduct, a court must first consider whether the action is a matter of choice for the acting employee.  This inquiry is mandated by the language of the exception; conduct cannot be discretionary unless it involves an element of judgment or choice.  Thus, the discretionary

---

[5]Docket No. 8, at 3.

[6]*Elder v. United States*, 312 F.3d 1172, 1176 (10th Cir. 2002).

[7]28 U.S.C. § 2680(a).

[8]486 U.S. 531 (1988).

function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow.  In this event, the employee has no rightful option but to adhere to the directive.  And if the employee's conduct cannot appropriately be the product of judgment or choice, then there is no discretion in the conduct for the discretionary function exception to protect.[9]

If the Court determines that the conduct in question does involve discretion or judgment, the Court then must determine whether the judgment is

of the kind that the discretionary function exception was designed to shield.  The basis for the discretionary function exception was Congress' desire to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.  The exception, properly construed, therefore protects only governmental actions and decisions based on considerations of public policy.[10]

Furthermore, if the first prong is satisfied,

it must be presumed that the agent's acts are grounded in policy when exercising that discretion.  For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime.  The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis.[11]

A.   DISCRETIONARY NATURE

In this case, Plaintiffs concede that the acts of the Park Service relevant to this action were discretionary in nature and were not compelled by any specific mandatory federal statute, regulation, or other directive.  Therefore, the first of the two prongs of the *Berkovitz* test for

---

[9]*Id.* at 536 (citations omitted).

[10]*Id.* at 536–37 (internal quotation marks and citations omitted).

[11]*U.S. v. Gaubert*, 499 U.S. 315, 324–325 (1991).

5

applying the discretionary function exception is satisfied and "it must be presumed that [the NPS's] acts are grounded in policy."[12]

B.      GROUNDED IN POLICY

To prevail on the second prong and avoid dismissal, Plaintiffs "must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime."[13]

In this case, the policies of the regulatory regime include the NPS policies contained in the NPS Organic Act.[14]  In that Act, the NPS is charged with

> promot[ing] and regulat[ing] the use . . . of national parks . . . by such means and measures as conform to the fundamental purpose of the said parks . . . which purpose is to conserve the scenery and the natural and historic objects and the wild life therein and to provide for the enjoyment of the same in such manner and by such means as will leave them unimpaired for the enjoyment of future generations.[15]

1.      WARNING SIGNS

Defendant contends that the NPS's decision of whether and how to warn of danger on the Pa'rus Trail

> involves social, economic, and political policy issues of the type that Congress intended to protect, including balancing the competing natural preservation purposes of park creation with providing access to park visitors, aesthetic

---

[12]*Id.*

[13]*Id.*

[14]16 U.S.C. § 1.

[15]*Id.*

considerations, the notice and need for various types of warnings, their
effectiveness, and practical concerns such as staffing and funding.[16]

Defendant cites to the Tenth Circuit's decision in *Elder*, to support this assertion.[17]

In *Elder*, a young boy who was trying to cross a stream near Middle Emerald Pools at
Zion slipped and fell to his death.  The boy's parents filed a lawsuit alleging that the NPS was
negligent in failing to adequately warn of the danger and in failing to erect barriers that would
have prevented the fall.  The court found that decisions regarding signs and barriers were
protected by the discretionary function exception because, "[f]or one thing, park officials must
weigh the cost of safety measures against the additional safety that will be achieved.  Even
inexpensive signs may not be worth their cost."[18]  The court also stated that, "[m]ore importantly,
in a national park whose purpose is to preserve nature and display its beauty to the public, any
safety measure must be weighed against damage to natural resources and aesthetic values."[19]

Plaintiffs argue that *Elder* is distinguishable from the instant case because "[s]ome places
don't have the particular esthetic value exemplified by the Emerald Pools" and "[t]here is
nothing to indicate that at the point on [the Pa'rus Trail] just before the bridge, a sign would be
particularly inappropriate."[20]  These arguments are not persuasive.

---

[16]Docket No. 31, at 25.

[17]312 F.3d at 1172.

[18]*Id.* at 1181.

[19]*Id.*

[20]Docket No. 35, at 4.

First, the relevant question in determining the applicability of the discretionary function exception to this case is whether the decision regarding the sign "can be said to be grounded in the policy of the regulatory regime,"[21] not—as Plaintiffs suggest—whether placing a warning sign was "particularly inappropriate."

Second, while it may be true that the placement of warning signs does not always involve policy considerations of aesthetics, that is not the case here.  The record in this case shows that the Pa'rus Trail winds through a natural, riverside portion of Zion—a "scenic park."[22]  And like the Emerald Pools, the Pa'rus Trail "is not a parking lot, but a scenic attraction."[23]

The Court finds that the NPS's decision of whether and where to place warning signs along the Pa'rus Trail can be said to be grounded in policy because it involves a balancing of the same policy factors identified by the court in *Elder* including costs, aesthetics, and overall effectiveness.  Accordingly, the NPS's decision is protected by the discretionary function exception.

2.    BRIDGE MATERIALS

As stated above, Plaintiffs have conceded that no federal directive mandated use of any specific materials when repairing the bridge and that the NPS's choice regarding materials was within its discretion.  Therefore, as with the NPS's decision regarding warning signs, to avoid application of the discretionary function exception, Plaintiffs must allege facts that support a

---

[21]*Gaubert*, 499 U.S. at 325.

[22]*Elder*, 312 F.3d at 1183.

[23]*Id.*

finding that the NPS's decision regarding bridge materials is "not the kind of conduct that can be said to be grounded in the policy of the regulatory regime."[24]

Plaintiffs do not dispute that design decisions are typically founded on policies that immunize such choices,[25] but they nevertheless argue that decisions regarding maintenance and repair are not based on policy considerations and are therefore not subject to the discretionary function exception.  To determine the applicability of the exception, therefore, the Court will consider only whether the decisions regarding the materials used to repair the bridge can be said to be grounded in policy.

Defendant argues that the NPS's decisions regarding the materials used to repair the bridge were grounded in policy in the same manner that the decision to initially construct the bridge was.  In support of its argument, Defendant cites to the Fourth Circuit's opinion in *Baum v. United States*.[26]

In *Baum*, the court found that the "decision of how and when to replace" a guardrail on a bridge over the Baltimore-Washington Parkway, "is, like the decisions involving design and construction, at bottom a question of how best to allocate resources."[27]  The court also found that "[s]uch a decision is inherently bound up in considerations of economic and political policy, and

---

[24]*Id.*

[25]*See e.g., Baum v. United States*, 986 F.2d 716, 722 (4th Cir. 1993) ("[W]e find the design and construction decisions in this case to be just the kind of [immune] planning-level decisions of which the Court spoke in *Gaubert*.").

[26]*Id.*

[27]*Id.* at 724.

accordingly is precisely the type of governmental decision that Congress intended to insulate from judicial second guessing through tort actions for damages."[28]  The court in *Baum* therefore found that the discretionary function exception barred the plaintiff's claims that the NPS was negligent in failing to replace the guardrail with one made of better materials.

Plaintiffs argue that *Baum* has no application to this case because corrective maintenance in *Baum* would have involved replacing the entire guardrail and "[t]hat would essentially negate the initial decision based on governmental policy in choosing the material."[29]  Thus, according to Plaintiffs, whether a decision regarding repairs or maintenance can be said to be grounded in policy depends on the size of the maintenance project.

In support of this argument,  Plaintiff cites to the Third Circuit's decision in *Gotha v. United States,*[30] and the District of Kansas's decision in *Raymond v. United States*.[31]

In *Gotha*, the court held that the Navy's failure to put in a stairway or a handrail at an often-used shortcut down a steep, unlit dirt pathway between buildings at a naval facility was not protected by the discretionary function exception.  The court summarized its rationale by stating that

> this case is not about a national security concern, but rather a mundane, administrative, garden-variety, housekeeping problem that is about as far removed from the policies applicable to the Navy's mission as it is possible to get.  In the

---

[28]*Id.*

[29]Docket No. 35, at 5.

[30]115 F.3d 176, 181 (3d Cir. 1997).

[31]923 F. Supp. 1419 (D. Kan. 1996).

words of the Supreme Court, the "challenged actions are not the kind of conduct that can be said to be grounded in the regulatory regime."[32]

The court also stated, in dictum, that the decision to "patch[] a hole in the floor of an office building" would not be a decision grounded in policy.[33]

In *Raymond*, the court held that the postal service's failure to replace a tile walking surface at or near the entrance to a post office, or to install a handrail or to put a mat there, allegedly resulting in plaintiff falling there when the tile was wet, was not immunized by the discretionary function exception because the postal service lacked a policy basis for its decision.[34]

While Plaintiffs may be correct that some decisions to make repairs are simply too small or insignificant to be susceptible to a policy analysis, the significance attributed to any decision must be measured against the relevant government actor's regulatory regime.[35]  In *Gotha*, for example, the court compared the Navy's failure to provide a walkway to the Navy's primary policy of promoting national security and held that the decision regarding the walkway was "about as far removed from the policies applicable to the Navy's mission as it is possible to

---

[32]*Gotha*, 115 F.3d at 181–82.

[33]*Id.* at 181.

[34]923 F. Supp at 1423.

[35]*See Gaubert*, 499 U.S. at 321–22 ("For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime.").

get."[36]  Similarly, in *Raymond*, the policies relevant to the regulatory regime of the postal service had little to do with its decision regarding tiles outside a post office.

The NPS, unlike the Navy or the postal service, is charged with "conserv[ing] the scenery and the natural and historic objects and the wild life [in national parks] and . . . provid[ing] for the enjoyment of the same in such manner and by such means as will leave them unimpaired for the enjoyment of future generations."[37]  Accordingly, while the decision by the Navy or the post office to build or repair a routine walkway may not be protected by the discretionary function exception, the same decision by the NPS—which operates under an entirely different regulatory regime—may be protected.

In this case, the NPS's decision regarding the materials to be used in constructing the bridge at issue can be said to be based on the policy of its regulatory regime.  In making this determination, as was stated above, the Court focuses "not on the [NPS's] subjective intent in exercising the discretion . . . but on the nature of the actions taken and on whether they are susceptible to policy analysis."[38]

Here, in deciding whether and how to repair a bridge, the NPS would likely make an effort to replace the wood planks on the bridge with ones that did not detract from the scenic view of the Pa'rus Trail.  It would also likely take into account the cost of the materials in an effort to minimize expenses.  Finally, the NPS would likely attempt to use materials that would

---

[36]115 F.3d at 181.

[37]16 U.S.C. § 1.

[38]*Gaubert*, 499 U.S. at 325.

provide the greatest amount of user access and that would be safe for users.  The decision,

therefore, "is inherently bound up in considerations of economic and political policy, and

accordingly is precisely the type of governmental decision that Congress intended to insulate

from judicial second guessing through tort actions for damages."[39]  Therefore, the discretionary

function exception acts to immunize the decision regarding bridge materials from judicial review

and this court does not have jurisdiction to hear Plaintiffs' claims.

## IV.  CONCLUSION

Based on the foregoing, the Court determines that the NPS's decisions regarding warning

signs along the Pa'rus Trail and the materials used in the bridge are protected by the discretionary

function exception to the FTCA.  Therefore, this Court has no subject matter jurisdiction over

Plaintiff's claim.

It is therefore

ORDERED that Defendant's Amended Motion to Dismiss (Docket No. 32) is

GRANTED.

The Clerk of the Court is directed to close this case forthwith.

---

[39]*Baum*, 986 F.2d at 724.

DATED   December 4, 2012.

BY THE COURT:

_____
TED STEWART
United States District Judge